DETWEILER *v.* VOEGE and others, (No. 1.)

SAME *v.* SAME, (No. 2.)

*(Circuit Court, E. D. New York. July 26, 1881.)*

1. PATENTED MACHINE—SALE BY OWNER OF PATENT.

When the owner of a patent himself sells a machine constructed for the purpose of using his invention, he is understood to have, to that extent, parted with his exclusive right to that invention.

2. SAME—FORECLOSURE SALE—OWNER OF PATENT A PARTY—CONSENT TO DECREE FOR SALE—VOLUNTARY SALE—RIGHTS OF VENDEES.

Upon a sale of a factory and its contents, including patented machines, under a suit for foreclosure of mortgage, to which the owner of such patents is a party and expressly consents to the decree for sale without reservation, and with no intimation of any claim on his part that the right to use the patented machines did not accompany the possession of them, *held*, so far as such machines are concerned, to be a voluntary sale by the owner of the patents, and, as such, the right to use them passes with their purchase and possession.

3. SAME—SAME—SAME—SAME—ESTOPPEL.

> Where, in such a case, the owner of the patents is interested in increasing the proceeds of the sale of such property, and takes the chance of being benefited by the enhancement of the price thereof arising from the presumption that the right to use the patented machines passes with the purchase and possession of them, and stands by and sees them sold without giving notice to the contrary, he will be estopped from thereafter claiming that the purchase did not carry with it the right to use such machines.

*I. Van Santvoord*, for complainant.

*Chas. B. Evans* and *F. B. Cozzens*, for defendants.

BENEDICT, D. J. The first action above mentioned is an action founded upon a patent issued to Edward C. Blakeslee for an improvement in machines for threading sheet-metal screws, No. 116,922, bearing date July 11, 1871.

The second action above named is founded upon a patent issued to Charles T. Newber and Frank W. Perry for an improvement in machines for forming screw threads on sheet metal, No. 145,893, bearing date December 23, 1873. The bill in the first suit claims that the defendants have infringed the first of the above-mentioned patents by using two machines, which in this case have been styled the Blakeslee threading machines. The bill in the second suit claims that the defendants have infringed the second of the above-mentioned patents by using two machines, which in this case have been styled the Newber & Perry machines. The actions have been tried together, and will be disposed of together.

There is no dispute in regard to the identity of the machines used by the defendants, or the circumstances attending their use. Two points of defence are presented,—one, a want of novelty in the invention described in the patents sued on; the other, that the machines in question were sold to the defendants under circumstances that entitled them to use the machines.

The last point is the only point requiring attention on this occasion. The four threading machines in question constitute part of the machinery of a factory in Camden devoted to the manufacture of cans. They, together with much of the machinery, were purchased by the defendants at a judicial sale made under a decree of the court of chancery of the state of New Jersey. The circumstances attending this sale are as follows:

In March, 1872, the plaintiff in these suits became the owner of the Blakeslee patent. In January, 1873, he assigned this patent to Henry T. Johnson, who, on April 25, 1873, assigned the same to a corporation organized April 19, 1873, and styled the "Standard Union

Manufacting Company." On April 16, 1873, David Hannyan bought of Samuel Croft a factory for manufacturing cans at Camden, already referred to, including its machinery, and gave back to Croft a mortgage, in which, on behalf of himself and his assigns, Hannyan covenanted that the mortgage should cover "all other tools, machinery, goods, and chattels hereafter used and placed in said building." On April 25, 1873, the day of the transfer of the Blakeslee patent to the Standard Manufacturing Company, that corporation, by a transfer from John L. Mason, came into possession of the factory bought of Croft, subject to the above-described mortgage of Croft, and thereupon the Standard Manufacturing Company commenced manufacturing with the machinery so transferred. Hannyan, who had transferred the factory to Mason, was one of the incorporators of the Standard Manufacturing Company. Johnson, who transferred the Blakeslee patent to the Standard Manufacturing Company, was one of its trustees.

Shortly after taking possession of the factory the Standard Manufacturing Company, being then owner of the Blakeslee patent, introduced into said factory, and thenceforth used therein as part of the machinery thereof, one of the Blakeslee machines in question here. The Newber & Perry patent was assigned to John L. Mason, one of the incorporators of the Standard Manufacturing Company, and thereafter the two Newber & Perry machines, forming the subject of the second of the above suits, were introduced into the factory and became part of its machinery, were thenceforth there used, and with the knowledge of Mason, the then owner of the Newber & Perry patent, and without objection by him. The Standard Manufacturing Company thus used these three machines in their factory until May 28, 1875, the same having been made and introduced into the factory under circumstances from which a license to use them must be implied.

By an instrument dated February 11, 1874, but not recorded until August, 1874, Detweiler, the plaintiff, by an assignment from the Standard Manufacturing Company, became again owner of the Blakeslee patent, and by assignment dated March 9, 1875, but not recorded until February 21, 1876, Detweiler became also owner of the Newber & Perry patent. But, as already stated, the Standard Manufacturing Company continued to operate the factory and use these three machines without objection from the plaintiff, or any intimation from him that the right to use them did not accompany their possession, until May 28, 1875. At that time Robert Fleming, a person interested in the Standard Company, having obtained judgment against

the Standard Manufacturing Company and John L. Mason, caused the machinery in the factory, including these three machines, to be sold at sheriff's sale, at which sale he bought in the property, and thereafter operated the factory himself, using the said machinery, including these three machines. While so operating the factory Fleming added to its machinery another Blakeslee machine, being the fourth of the machines complained of in this action.

It cannot be doubted, I think, that Fleming, when he introduced this last machine, knew of the mortgage on the factory held by Croft, and that the plaintiff was at all times aware of the existence of this mortgage. On December 6, 1876, the plaintiff caused an attachment to be levied on the machinery of the factory as the property of Fleming, and on June 12, 1877, Croft, who it seems had taken the possession of the machinery of the factory, including these four machines, by virtue of his mortgage, filed his bill in equity to foreclose his mortgage. To this suit both Detweiler and Fleming were made parties; but they made no defence, the bill was taken as confessed, and a decree was ordered directing the sale of the machinery of the factory, including these four machines. After the decree was ordered, Detweiler, the plaintiff here, gave express consent to the entry of the decree. Upon that consent a decree was entered directing the sale of the property, and in pursuance of that decree these four machines, with the rest of the machinery of the factory, were sold, and were bought by the defendants. Detweiler, the plaintiff, not only consented to the decree, but made no objection to the sale of the machinery, and gave no intimation to any one, at any time, of any claim on his part that the right to use the machines did not acompany the possession of the machines. But now he asks this court of equity to interpose to prevent the further use of these machines by the persons who bought them at the sale above described, upon the ground that the right to use the machines did not pass to the defendants. In my opinion he is not entitled to such relief.

As I understand the law, when the owner of a patent himself sells a machine constructed for the purpose of using his invention, he is understood to have to that extent parted with his exclusive right to his invention. The sale made of the four machines in question to the defendants was a voluntary sale, so far as Detweiler was concerned, for Detweiler was a party to the suit and he gave express consent to their sale. The proceeding was against a large amount of property comprising the machinery of a factory. There was no reservation in the decree of any right in respect to any of the ma-

chines. The court of chancery had possession of this property. The proceeding was *in rem*, and it must be assumed that if the intention of the decree had been to convey merely the wood and iron composing a part of the property sold, without any right to use the same, such an intention would have been expressed in the decree. If Detweiler desired such a reservation, it was his duty, being a party, to apply for such a reservation, instead of which he gave express consent to a decree directing the sale, without any reservation. In my opinion a sale made under such circumstances has, as against Detweiler, the same effect as if he had himself sold the machines to the defendants, and gave to the defendants the right to use the machines.

Furthermore, those machines were part of the operating machinery of a factory. They had long been used in the factory, without objection on the part of the owners of these patents. They were being so used when Detweiler became the owner of these patents, as he beyond doubt knew, and their use was continued without objection on his part; nor did he ever intimate to any person that the right to use the machines had not been acquired by the parties possessing the same. The defendants purchasing the machines under such circumstances were justified in the belief that, by their purchase, they acquired the right to use these machines as well as the rest of the machinery. It must be assumed that this belief enhanced the price they paid for the machines, for, without the right to use, the machines were nothing but old iron. Detweiler was interested in increasing the proceeds of the sale, for he was to share in the surplus of the proceeds after paying Croft's mortgage, and he took the chance of being benefited by the enhancement of the price, and stood by and saw the machines sold without giving notice that the right to use did not pass with the right to the possession. If he intended to claim otherwise under the circumstances, being a party to the suit, having consented to the sale, and on former occasions having acquiesced in the right of the possessors of the machines to use them, it was his duty to have spoken. Having failed to speak when equity required him to speak, he will not now be heard to speak when equity requires him to be silent.

Upon these grounds I am of the opinion that the bill should be dismissed, and with costs.